IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher Bernard Jones, #294172, | ) Civil Action No. 6:06-2202-PMD-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Perry S. Luthi, Sr., Desmine Sardine, Luthi | ) **REPORT AND RECOMMENDATION** |
| Mortgage Company, Inc., Caroline Tax Service, | ) |
| Luthi Construction Company, Liberty Funding, | ) |
| General Funding, Perry S. Luthi, Jr., Martha Pace, | ) |
| Lori Murphy, Carol A. Simpson, Ira Handy, | ) |
| Handy's Moisture and Pest,Pete Peterson, | ) |
| Ron Platt, Marsha Platt, Sonny Ninan, Michael | ) |
| Doe, Dee Dee Doe, and Kim Doe, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff is a pro se prisoner. The allegations in his complaint concern real estate transactions in which he was involved in Greenville County in 2004 prior to his incarceration. Plaintiff filed a motion for partial summary judgment and memorandum of law (Doc. No. 70) on February 26, 2007, "as to all defendants represent (sic) by attorney Melvin Hutson, Esq." Hutson filed an opposition memorandum on March 9, 2007 on behalf of his clients Perry S. Lutthi, Sr.; Desmine Sartain, aka Dee Dee Sartain; Luthi Mortgage Co., Inc.; Carolina Tax Service, Inc.; Luthi Construction Co.; Liberty Funding, Inc.; General Funding, Inc.; Perry S. Luthi, Jr.; Martha Pace; Lori Murphy; Peter Peterson; Michael Hurlburt; and Kimberly Ray[1] (hereinafter "the defendants"). (Doc. No. 74). On February 26, 2007, these same defendants, through counsel, filed a motion for summary judgment as to all claims (Doc. No. 71). Because Jones is pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on March 5, 2007, explaining to him his responsibility in responding to the motion for summary judgment. Jones filed a response on March 8, 2007 (Doc. No. 75).

---

[1]The defendants Michael Doe, Dee Dee Doe and Kim Doe appear to be Michael Hurlburt, Desmine Sartain, and Kathy Ray.

### Facts

Little meaningful discovery has occurred in this case, and it is relatively undeveloped. The case was delayed after the filing of the motions for summary judgment based upon Jones' interlocutory appeal to the Fourth Circuit. The appeal was denied on December 17, 2007.

The record shows that before Jones became an inmate at the South Carolina Department of Corrections, he was a residential building contractor in Greenville County. The defendants in this case were involved in the financing, construction, and litigation surrounding the purchase of three lots and construction of dwellings on two of them. The following facts are based on the affidavit of Perry S. Luthi, Sr. which is attached to defendants' memorandum in support of their motion for summary judgment and are quoted verbatim from that document.

> The basic facts in this case appear to be undisputed and are set forth in the attached affidavit of Perry S. Luthi, Sr. These basic facts are as follows. Plaintiff, Christopher B. Jones, purchased three vacant lots in the River Run subdivision in Greenville County from Liberty Funding, Inc., in 2004. His announced purpose for the purchase was to build houses on those lots for resale. Jones borrowed the purchase money for these lots from Luthi Mortgage Company. He also borrowed money to pay the cost of construction. Each loan was secured by a mortgage.

> Jones purchased River Run lot number 19 on February 26, 2004. The total amount of the loan was $82,099.20, of which $49,080.00 was available for draws as construction progressed. All those draws were advanced to Jones by April 4, 2004. On June 29, 2004, Luthi Mortgage Company filed a Lis Pendens and a Summons and Complaint seeking to foreclose on the property for violating the terms of the note and mortgage. The Master in Equity for Greenville County granted judgment against Jones and the property was sold to Luthi Mortgage Company at auction.

> Jones purchased River Run lot number 5 on March 11, 2004. The total loan was $80,462.55, of which $51,960.00 was available for draws as construction progressed. None of the construction money was advanced since work never began on the planned house and Jones signed a deed to Luthi Mortgage Company in lieu of foreclosure on May 10, 2005.

> Jones also purchased River Run lot number 10 on April 26, 2004. The total loan was $80,462.55, of which $51,960.00 was available for draws as construction progressed. Of those construction funds, $24,061.60 was drawn with the final draw being made on November 4, 2004. Further draws were denied for lack of progress on the house and because mechanic liens showing the money previously advanced had not been used to pay subcontractors and vendors as required. Luthi Mortgage Company filed a Lis Pendens and a Summons and Complaint seeking to foreclose on the property on December 16, 2004. The Master in Equity for Greenville County granted judgment against Jones, and the property was sold to Luthi Mortgage Company at auction on June 30, 2005.

Luthi Mortgage Company has been unable to resell the houses and, as a result, has substantial losses on these transactions.

## Discussion

1.    Truth in Lending Act

The complaint in this matter is jumbled making it difficult to ascertain Jones' claims and to determine against which defendant or defendants the claims are alleged. In the "Jurisdiction" section of the complaint, Jones alleges federal question jurisdiction citing 28 U.S.C. § 1331(a) and lists "Truth-in-Lending Act, 15 U.S.C.A. 1601 et seq., Regulation Z, 12 CFR Section 226 (b)(5)" as one of the federal statutes alleged to have been violated by the defendants. The complaint does not further mention the Truth in Lending Act ("TILA"), but generally alleges that "Perry S. Luthi, Sr. and Luthi Mortgage Company charged the plaintiff for items and services not rendered to the plaintiff (Complaint, ¶ 32) and that "the defendants misrepresented the rates and terms of the mortgage and promissory note at various closings." (Complaint, ¶ 40). It is assumed that these paragraphs comprise Jones' allegation that defendants violated the TILA.

Jones' motion for partial summary judgment asserts that he is entitled to summary judgment on his TILA claim. Attached to his memorandum in support of his motion for partial summary judgment are two TILA disclosure forms, one for Lot 10 River Run and the second for 82 Bluff Rd.[2] The defendants assert that despite the fact disclosure forms were used, the TILA does not apply to the loans in question.

In passing the TILA, Congress found

> [T]hat economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

---

[2]Apparently Bluff Road is the address of one of the three lots mentioned above within River Run Subdivision. The lots are sometimes referred to by the parties by their street location.

15 U.S.C. § 1601. The TILA defines "consumer" as an adjective which, when "used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. 1602(h). Specifically exempted from the TILA are "(c)redit transactions, other than those in which a security interest is or will be acquired in real property...used or expected to be used as the principal dwelling of the consumer." 15 U.S.C. § 1603.

Under these provisions, the undersigned concludes that the TILA does not cover the three loan transactions about which Jones complains. As discussed above, the loans were for the purpose of building homes Jones hope to sell to "consumers." He did not intend that the dwellings would become his personal residence. See Antanuos v. First Nat'l Bank of Arizona, 508 F. Supp. 2d 466, 471 (E.D.Va. 2007) (TILA applies only to credit transactions secured by real property used or expected to be used as the principal dwelling of the debtor).

It is, therefore, recommended that Jones' motion for partial summary judgment be denied and that the defendants be granted summary judgment as to Jones' TILA claim.[3]

2.    Other Federal Claims

As discussed above, Jones lists a number of federal statutes in addition to the TILA in the jurisdiction section of the complaint and mentions some of them later in the complaint. Jones is not entitled to proceed on these claims for a variety of reasons.

Jones lists 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud) in his jurisdictional section. However, these are criminal statutes and do not provide a private cause of

---

[3]This conclusion applies equally to Regulation Z and the other regulations cited by Jones. See 12 C.F.R. § 226.2(a)(24). (Regulation Z applies to "a transaction in which a mortgage...arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling.").

action for civil redress.[4]  Jones also lists the "Federal Trade Commission Act, 15 U.S.C. [§] 45(a)(1)." Enforcement of the Federal Trade Commission Act is left to the Federal Trade Commission. Holloway v. Bristol-Myers Corp., 485 F.2d 986 (D.C. Cir. 1973).  It does not provide a private cause of action allowing individuals to sue for alleged violations of the Federal Trade Commission Act.    Dolan v. Fairbanks Capital Corp., 2005 WL 1971006, *2 (E.D.N.Y.) (unpublished) citing Alfred Dunhill Ltd. v. Interstate Cigar Co., 499 F.2d 232, 237 (2nd Cir. 1974) ("[T]he provisions of the Federal Trade Commission Act may be enforced only by the Federal Trade Commission. Nowhere does the Act bestow upon either competitors or consumers standing to enforce its provisions.").

Jones also lists 42 U.S.C. § 1983 in the jurisdictional section of his complaint.  He also alleges in that section "violations of the Fourteenth Amendment of the U.S. Constitution guaranteed Due Process Clause and Equal Protection Clause."  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Under § 1983, a plaintiff must meet three requirements to bring suit in federal court.  He must show that he was deprived of a right guaranteed by the Constitution or laws of the United States, by a "person," who was acting  "under color of" state law.  Jones has not shown[5] that any of the defendants were state actors.  Therefore, he may not proceed under this statute.  See United States v. Classic, 313 U.S. 299, 326 (1941) ("Misuse of power, possessed by virtue of state law and

---

[4]Acts of mail and wire fraud may comprise a pattern of racketeering activity under the Racketeer Influenced and Corrupt Organizations Act.  See discussion below.

[5]Jones alleges that the defendants submitted false information to the state courts during the foreclosure actions "thus under color of [state] law for the unlawful theft of plaintiff's property." (Complaint, ¶ 42).  Private use of state sanctioned remedies does not, by itself, constitute state action. Georgia v. McCollum, 505 U.S. 42, 51-52 (1992).

made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.") and Monroe v. Pape, 365 U.S. 167 (1961).

Jones also cites the Sherman Antitrust Act (15 U.S.C. § 1, et seq.) and the Clayton Act (15 U.S.C. § 15, et seq.) as the basis for jurisdiction. These statutes do provide for a private clause of action.

> Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, are broadly worded statutes designed to counter restraints of trade and monopolistic practices; but are actionable by private individuals only through Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26. Section 4 of the Clayton Act allows private enforcement of the antitrust laws through a treble damages action by 'any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws [.]'

Re/Max Intern. v. Realty One, Inc., 900 F.Supp. 132, 145 (N.D.Ohio 1995) (internal citations and footnotes omitted).

In pursuing a Clayton Act claim, a plaintiff must allege, and at the summary judgment stage produce evidence, that he has suffered an antitrust injury. Id., n.3 and Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn., 108 F. Supp. 2d 549, 592 (W.D.Va. 2000). "[A]ntitrust injury...is... injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation. It should, in short, be 'the type loss that the claimed violations...would likely to cause." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977) quoting Zenith Radio Corp. v. Hazeltime Research, Inc., 395 U.S. 100, 125 (1969).

Jones makes only a vague allegation that "the defendants did injure the plaintiff in his business or property by acts which are forbidden or declared to be unlawful in the Sherman Antitrust Act." (Complaint, ¶ 62). He has not identified any acts which would constitute restraints of trade or monopolistic practices of any defendant. He has not produced any evidence that he has suffered an antitrust injury as required by Brunswick.

6

Jones also appears to allege that defendants violated "RESPA", i.e., the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601. "Congress enacted RESPA in 1974 to advance disclosure of settlement costs, eliminate kickbacks and fees that increase such costs, reduce the funds buyers place in escrow prior to the closing of real estate sales, and modernize recordkeeping of title information." Capell v. Pulte Mortgage, L.L.C., 2007 WL 3342389, *2 (E.D. Pa. 2007) (unpublished) citing 12 U.S.C. § 2601(b). "RESPA requires that certain practices and procedures be followed in settlement by a lender of a 'federally related mortgage loan' 12 U.S.C. §§ 2601-2617. This term, 'federally related mortgage loan,' refers to certain loans secured by properties that are designed as residences for four families or less. Id. § 2602(1). Such a home loan becomes a federally related mortgage loan, subject to RESPA's requirements, if a lender is regulated or insured by a federal agency, if the lender issues the loan in connection with a federal housing program, or if a lender sells its loans to certain government-sponsored enterprises." Mullinax v. Radian Guar., Inc., 199 F. Supp. 2d 311, 318 (M.D.N.C. 2002).

Jones purchased the properties from Liberty Funding and negotiated loans with Luthi Mortgage Co., Inc. to finance the purchase and costs of construction of the houses on each lot. Jones does not allege, and there is no evidence, that these were "federally related mortgage loans" subject to RESPA.

Last, Jones generally alleges that defendants have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. as a basis for jurisdiction. There is little in the complaint or in the record to define this claim. There is no specific cause of action for a RICO violation (or any of Jones' federal claims). After the jurisdictional allegation, the only further specific reference is "(t)hat defendant companies are established as a unified organization structure, and thus, fulfill the prerequisites if (sic) RICO." (Complaint, ¶ 61).

RICO provides a civil remedy for private plaintiffs who are injured by a defendant's criminal acts. Section 1964(c) states that "(a)ny person injured in his business or property by a reason of a violation of section 1962...may sue therefore...." Generally to have standing to bring an action under

7

§ 1964(c), the private plaintiffs must allege (1) violations of § 1962; and (2) injuries to their business

or property proximately caused by the alleged violations.  <u>Sadighi v. Daghighfekr</u>, 36 F. Supp. 2d

279, 286 (D.S.C. 1999).  Prohibited activities are defined by § 1962, which provides:.

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.  A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
>
> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Jones does not indicate whether his RICO claim is under § 1962(a), (b), (c), or (d).  Two

elements, common to all four subsections, are a nexus with "interstate or foreign commerce" and

a pattern of racketeering activity.  There is no allegation or evidence that defendants' activities

affected interstate or foreign commerce.  It appears that all defendants are based in South Carolina

and their activities, as related to Jones, all occurred in this state.  Further, there is no allegation or

evidence that the defendants engaged in a pattern of racketeering activity.

In any event, the undersigned construes Jones' RICO allegation to be pursuant to § 1962(c)

based on the allegations of the complaint.

To state a claim under § 1962(c), Jones must allege that (1) a defendant person (2) employed or associated with (3) an enterprise, engaged in, or the activities of which affect, interstate or foreign commerce, (4) conducts or participates in the conduct of the affairs of the enterprise (5) through a pattern of racketeering activity. See 18 U.S.C. § 1962(c). In short, § 1962(c) prohibits a person employed or associated with an enterprise from conducting that enterprise through a pattern of racketeering activity. See Palmetto State Med. Ctr. v. Operation Lifeline, 117 F.3d 142, 148 (4th Cir. 1997). The Fourth Circuit also mandates that "[t]he enterprise must be distinct from the persons alleged to have violated § 1962(c)." Id.; see also New Beckley Mining Corp. v. International Union, UMW of America, 18 F.3d 1161, 1165 (4th Cir. 1994) (finding that the district court properly dismissed a § 1962(c) claim because the defendant persons were not distinct from the alleged enterprises). To proceed under § 1962(c), plaintiff must offer proof of an enterprise conducted through a pattern of racketeering activity.

Section 1961(4) defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any group of individuals associated in fact although not a legal entity." Under § 1962(c), the "person" (i.e., defendant) must be separate and distinct from the enterprise. Jones has not shown a separate and distinct enterprise.

Any RICO claim must allege a factually supported "pattern of racketeering activity." The statute defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years...after the commission of a prior act of racketeering activity." (18 U.S.C. § 1961(5)). At least two predicate acts are required to allege a pattern, but two may not be enough. Sadighi, supra at 287, quoting Brandenburg v. Seidel, 859 F.2d 1179, 1185 (4th Cir. 1988).

In H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237 (1989), the Supreme Court observed that 18 U.S.C. § 1961 "does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." The Court then discussed the legislative history of the RICO statute and concluded that "to prove a pattern of racketeering activity

9

a plaintiff...must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Id. at 239. The Court borrowed the definition of "relatedness" from the Organized Crime Control Act of 1970:

> [C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

(Id. at 240).

Racketeering activity is defined to include "any act which is indictable under any of the following provisions of title 18...sections 1341...1343" (relating to mail fraud and wire fraud). 18 U.S.C. § 1961(1)(B).

Rule 9(b), Fed. R. Civ. P., states in part: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In Mylan Laboratories, Inc. v. Akzo, N.V., 770 F.Supp. 1053, 1074 (D.Md. 1991), the court engaged in a thorough analysis of the applicability of Rule 9(b) to RICO allegations involving fraud and found:

> Rule 9(b) applies to claims arising under RICO, and a RICO claim alleging fraud as its underlying predicate act must do so with particularity or else be dismissed. The requirement of particularity does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists. Specifically, detail is necessary when pleading the circumstances of fraud. The rule requires the presentation of the situation out of which the claim arose. **Circumstances refers to such matters as the time, place and contents of the false representations, as well as the identity of the person making the representation, and what [was] obtained thereby.**

(Internal quotations and citations omitted) (Emphasis added).

After reviewing the pleadings and record in this matter, the undersigned concludes that insofar as Jones has pled a RICO violation, it should be dismissed. First as noted above, Jones has failed to show an interstate nexus. Second, Jones has not adequately pled a pattern of racketeering activity.

3.    State Claims

After the jurisdictional section of the complaint and the listing of the parties involved in the law suit, Jones alleges a specific claim for a "Complaint On Promissory Note."[6]  After his statement of facts, Jones alleges six specifically enumerated causes of action which appear to be based on state law: fraud, civil conspiracy, misrepresentation, extortion, deceit, and violation (i.e., breach) of fiduciary duty.  Three of these alleged causes of action (misrepresentation, extortion and deceit) do not appear to be torts under South Carolina law.[7]

Jones' remaining state claims, fraud, civil conspiracy and breach of fiduciary duty (as well as any other claims which might be found on a liberal interpretation of the pro se complaint) all involve the three real estate transactions discussed above.  The defendants argue that these claims are barred by the doctrine of res judicata.

The defendants have moved for summary judgment as to all causes of action based on the doctrine of res judicata.  This doctrine, sometimes referred to as claim preclusion, prohibits the parties or their privies from relitigating issues previously raised and decided, and issues which could have been raised in a prior action.  See Kremer v. Chemical Constr. Corp., 456 U.S. 461 (1982).  The doctrine promotes public policy in that it minimizes the cost and vexation of multiple law suits, it conserves judicial resources, limits inconsistent decisions by different courts, and encourages finality on adjudication.  Allen v. McCurry, 449 U.S. 90 (1980) and Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322 (1979).  In order for res judicata to apply to a pending case, the moving party must demonstrate: "(1) a final judgment on the merits in an earlier suit, (2) an identity of causes of

_____

[6]Copies of three promissory notes are attached to the complaint.  Jones executed these notes in favor of Luthi Mortgage Co., Inc. and they appear to be the notes secured by the mortgages on the lots identified above.

[7]South Carolina law recognizes a cause of action for negligent misrepresentation.  AMA Management Corp. v. Strasburger, 420 S.E.2d 868 (S.C.Ct. App. 1992).  However, Jones makes no allegation of negligence in his complaint. A false representation is an element of fraud.  Kahn Constr. Co. v. South Carolina Nat'l Bank of Charleston, 271 S.E.2d 414 (S.C.1980).

action in both the earlier suit and the later suit, and (3) an identity of parties or their privies in the two suits." Keith v. Aldridge, 900 F.2d 736 (4th Cir.), cert. denied, 498 U.S. 900 (1990).

The mortgages securing the loans on Lots 19 and 10 of River Run Subdivision were foreclosed in the Court of Common Pleas for Greenville County. The Master-In-Equity issued a judgment of foreclosure and the property was sold at auction. (Luthi Aff., Ex. 1 and 2). The court made appropriate findings of fact and conclusions of law. Jones did not appear and defaulted in both actions. Jones could have raised all the issues he raises in this court as defenses in the foreclosure actions. Thus, the undersigned concludes that all claims raised by Jones that relate to transactions involving Lots 19 and 10 are barred by the doctrine of res judicata.

The mortgage securing the loan on Lot 5 of River Run Subdivision was not foreclosed. Instead, this property was deeded to Luthi Mortgage Co., Inc. in lieu of foreclosure. Construction was not started on this lot and no construction funds were advanced.[8] (Luthi Aff., p. 3). The only allegation Jones makes with respect to this property is that "Defendants, Martha Pace, Lori Murphy, Perry S. Luthi, Sr. and others did conspire together, and as one, to manipulate and extort the plaintiff to sign over his interest in "Lot 5"...This was without any compensation for the property." (Complaint, ¶ 51). Jones offers no evidence concerning Lot 5.

Under South Carolina law the elements of a civil conspiracy are: (1) a combination of two or more persons; (2) for the purpose of injuring plaintiff; and (3) which causes him special damage. Charles v. Texas Co., 5 S.E.2d 464 (S.C. 1939). There is no evidence of damage, much less special damage, to Jones with respect to Lot 5. It appears that Jones financed the purchase of Lot 5 and the other lots. There is no evidence that Jones supplied any money at the closings. There was no construction on Lot 5 and no disbursements or draws on the construction loan. Since civil conspiracy is the only claim Jones specifically alleges with respect to Lot 5, and he has not alleged or shown special damages, defendants are entitled to summary judgment.

---

[8]Jones alleges that he did begin construction on Lot 5, but offers no evidence on this point. (Complaint, ¶ 51).

Plaintiff fails to show that the defendants have violated his rights under federal law (as discussed above) such that only potential state law claims remain.    Thus, it is alternatively recommended that any remaining state law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

4.        Declaratory Judgment

The complaint also contains a "Petition for Declaratory Judgment."  Jones cites 28 U.S.C. § 2201 and Rule 57, Fed. R. Civ. P, and "demands a declaratory judgment against defendants for the sum of $560,000.00 plus interest and costs."

Jones appears to misunderstand the purpose and function of § 2201.  Given the allegations of the complaint, and the procedural status of this case, the court should exercise its discretion and dismiss Jones' claim for a declaratory judgment.

5.        Default Judgment

Jones filed a motion for default judgment against Ira Hardy, Handy's Moisture and Pest Control, and Sonny Ninan on November 26, 2006 (Doc. No. 35).  He filed a second motion for default judgment on December 20, 2006 which added Ron Platt and Marsha Platt (Doc. No. 56). On June 28, 2007, Jones filed a motion for writ of mandamus in this court seeking to require this court to enter default judgment and take other actions which he demanded, such as certifying his case as a class action and to issue criminal process against the defendants.

Addressing Jones' motions for default judgment was delayed pursuant to Rule 54(b), Fed. R. Civ. P., pending resolution of the claims against the defendants who appeared in the case.  The record shows that Ira Handy and Handy's Moisture and Pest Control were served by mail.  The United States Marshal personally served Marsha Platt and left a copy of the summons and complaint with her for her husband, Ron Platt.  The Marshal attempted service on Sonny Ninan by mail, but despite the fact that restricted delivery was required, someone other than Ninan signed for receipt. Thus, the undersigned concludes that Ira Handy, Handy's Moisture and Pest Control, Ron Platt and Marsha Platt were properly served and have not appeared in the case.

13

The allegations against these parties are sparse. All are listed in the "Parties" section of the complaint. It appears that Ira Handy owns Handy's Moisture and Pest Control and that he did some work on Jones' projects. (Complaint, ¶ 14). Neither Ira Handy nor Handy's Moisture and Pest Control are mentioned further in the complaint. Sonny Ninan is alleged to be a "broker" for Perry S. Luthi and Luthi Mortgage Co., Inc. (Complaint, ¶ 19). The only other reference to him is that "Sonny Ninan of Rhino Realty equally participated in the conspiracy, and benefited from his acts in the unlawful thefts of plaintiff's property. (Complaint, ¶ 53). The Platts are alleged to be "customers of Luthi Mortgage, and are former clients of the Plaintiff." (Complaint, ¶ 18). The only allegation against the Platts is that "Perry S. Luthi, Sr. demanded that Ron and Marsha Platt not honor purchase contract of said home and instead wait for Luthi to foreclose and purchase from Luthi." (Complaint, ¶ 48).

The issue presented with respect to these defendants is whether they should be held in default and liable to Jones even though this Report and Recommendation recommends that the motion for summary judgment of the answering defendants be granted and that all claims against them be dismissed. In Frow v. De La Vega, 82 U.S. 552 (1872), the Supreme Court found that such a result would be an "incongruity" and "absurd." Id.at 554. Some courts have limited Frow to cases in which the defendants are jointly liable. See In re Uranium Antitrust Litig., 617 F.2d 1248, 1256-58 (7th Cir. 1980) and International Controls Corp. v. Vesco, 535 F.2d 742, 746-47 (2d Cir. 1976). In U.S. for Use of Hudson v. Peerless Ins. Co., 374 F.2d 942, 944 (4th Cir. 1967), the Fourth Circuit held that "although Frow was a case of joint liability, we think the procedure established for multiple defendants by Rule 54(b) is strikingly similar to situations of joint liability but also to those where liability is joint and/or several." Courts have used their discretion to not impose default judgment against defendants in circumstances similar to the non-answering defendants in this case. See Jefferson v. Briner, Inc., 461 F. Supp. 2d 430 (E.D.Va. 2006), Carter v. Rosenberg, 2005 WL 782923 (D.Md. April 7, 2005) (unpublished); Moss v. Moss, 2005 WL 1288134 (Bankr. M.D.N.C, May 16, 2005); Phoenix Renovation Corp. v. Gulf Coast Software, Inc., 197 F.R.D. 580 (E.D.Va.

14

2000).   Thus, it is recommended that Jones' motions for default judgment and motion for writ of mandamus be denied.

6.        Motion for Entry of Judgment

On May 18, 2007, Jones filed a motion for entry of judgment pursuant to Fed. R. Civ. P. 58. (Doc. No. 82).  It appears that Jones filed this motion based on the delay in addressing his motions for default and summary judgment.  In that motion, Jones "demands that an entry of judgment be entered in favor of plaintiff forthwith."   Rule 58 is a procedural rule designed to provide a uniform order and time for the filing of judgment at the conclusion of a case.  Rule 58 is not a substitute for Rule 54 or 56.

### Conclusion

After reviewing the record in this case, it is recommended that:

1.        Plaintiff's motion for partial summary judgment (Doc. No. 70) as to his claim under the Truth in Lending Act be denied;

2.        Plaintiffs' motions for default judgment and motion for writ of mandamus be denied. (Doc. Nos. 35, 56 and 92);

3.        Plaintiff's motion for entry of judgment be denied (Doc. No. 82);

4.        The motion for summary judgment of the defendants Perry S. Luthi, Sr., Desmine Sartain a/k/a Dee Dee Sartain, Luthi Mortgage Co., Inc., Carolina Tax Service, Luthi Construction Co., Liberty Funding, General Funding, Perry S. Luthi, Jr., Martha Pace, Lori Murphy, Pete Peterson, Michael Hurlburt, and Kimberly Ray (Doc. No. 71) be granted;

5.        Summary judgment be granted sua sponte as to all claims against Carol A. Simpson for the reasons discussed herein;[9] and

6.        Summary judgment be granted sua sponte as to all claims against Ira Handy, Handy's Moisture and Pest Control, Ron Platt, Marsha Platt, and Sonny Ninan for the reasons discussed above.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

February 15, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[9]Simpson is an attorney who filed a pro se answer.  She has not moved for summary judgment, but the discussion of plaintiff's claims and the conclusions reached above apply equally to her.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).