IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Christopher Bernard Jones, #294172,    )
    )
    Plaintiff,    )
    )
v.    )    C.A. No.:6:06-2202-PMD-JRM
    )
Perry S. Luthi, Sr.; Desmine Sartain;    )
Luthi Mortgage Company, Inc.; Carolina    )    **ORDER**
Tax Service; Luthi Construction Company;    )
Liberty Funding; General Funding; Perry    )
S. Luthi, Jr.; Martha Pace; Lori Murphy;    )
Carol A. Simpson; Ira Handy; Handy's    )
Moisture and Pest; Pete Peterson; Ron    )
Platt; Marsha Platt; Sonny Ninan; Michael    )
Doe; Dee Dee Doe; and Kim Doe,    )
    )
    Defendants.    )
_____)

This matter is before the court upon several recommendations of United States

Magistrate Judge Joseph R. McCrorey, filed in three separate Reports and Recommendations

("R&R"). Magistrate Judge McCrorey first recommended that Plaintiff Christopher Bernard

Jones's ("Plaintiff" or "Jones") Motion to Certify a Class be denied. (*See* Doc. No. [125].)

Magistrate Judge McCrorey also recommended that Plaintiff's Motions for Summary Judgment

with respect to Defendants Carol Simpson, Ira Handy, Handy's Moisture and Pest Control,

Sonny Ninan, Ronald Platt, and Marsha Platt be denied. (*See* Doc. No. [127].) In his last R&R,

issued on February 15, 2008, Magistrate Judge McCrorey recommended that:

    1. Plaintiff's motion for partial summary judgment (Doc. No. 70) as to his claim
    under the Truth in Lending Act be denied;
    2. Plaintiff's motions for default judgment and motion for writ of mandamus be
    denied (Doc. Nos. 35, 56 and 92);
    3. Plaintiff's motion for entry of judgment be denied (Doc. No. 82);
    4. The motion for summary judgment of the defendants Perry S. Luthi, Sr.,
    Desmine Sartain a/k/a Dee Dee Sartain, Luthi Mortgage Co., Inc., Carolina Tax

> Service, Luthi Construction Co., Liberty Funding, General Funding, Perry S.
> Luthi, Jr., Martha Pace, Pete Peterson, Michael Hurlburt, and
> Kimberly Ray (Doc. No. 71) be granted;
> 5. Summary judgment be granted sua sponte as to all claims against Carol A.
> Simpson for the reasons discussed herein; and
> 6. Summary judgment be granted sua sponte as to all claims against Ira Handy,
> Handy's Moisture and Pest Control, Ron Platt, Marsha Platt, and Sonny Ninan for
> the reasons discussed above.

(R&R dated Feb. 15, 2008 at 15.)[1]  As noted, the Record contains three Reports and

Recommendations ("R&R") of a United States Magistrate Judge which were made in accordance

with 28 U.S.C. § 636(b)(1)(B).  A dissatisfied party may object, in writing, to an R&R within ten

days after being served with a copy of that report.  28 U.S.C. § 636(b)(1).  On or about February

22, 2008, Plaintiff filed objections to the Magistrate Judge's recommendation that Plaintiff's

Motions for Summary Judgment with respect to Defendants Carol Simpson, Ira Handy, Handy's

Moisture and Pest Control, Sonny Ninan, Ronald Platt, and Marsha Platt be denied.  (*See* Doc.

No. [135].)  Then, on March 6, 2008, Plaintiff filed a Motion to Consolidate his objections, such

that he would be able to respond to all R&Rs in one document.  The court granted this motion

and extended the time Plaintiff had to file objections to all three R&Rs.  The court's order

indicated that Plaintiff had up to and including March 22, 2008, in which to file any objections

and that no further extensions would be granted.  (*See* Doc. No. [141].)[2]

When no additional objections were filed, the court considered the objections filed on

February 22, 2008 as the only objections filed in the case.  On March 26, 2008, the court issued

---

[1]In this R&R, the Magistrate Judge noted that Defendants Michael Doe, Dee Dee Doe, and Kim Doe appear to be Michael Hurlburt, Desmine Sartain, and Kathy Ray.

[2]Because March 22, 2008, was a Saturday, Plaintiff had through Monday, March 24, 2008, in which to timely file his objections.  *See* Fed. R. Civ. P. 6(a)(3).

an order denying [33] Plaintiff's Motion to Certify Class; denying [67, 68, and 69] Plaintiff's

Motions for Summary Judgment; denying [70] Plaintiff's Motion for Partial Summary Judgment

as to his claim under the Truth in Lending Act; denying [35, 56, and 92] Plaintiff's Motions for

Default Judgment and for Writ of Mandamus; denying [82] Plaintiff's Motion for Entry of

Judgment; granting [71] the Motion for Summary Judgment filed by Defendants Perry S. Luthi,

Sr., Desmine Sartain a/k/a Dee Dee Sartain, Luthi Mortgage Company, Inc., Carolina Tax

Service, Luthi Construction Company, Liberty Funding, General Funding, Perry S. Luthi, Jr.,

Martha Pace, Lori Murphy, Pete Peterson, Michael Hulburt, and Kimberly Ray; granting

summary judgment sua sponte in favor of Defendant Carol A. Simpson; and granting summary

judgment sua sponte in favor of Defendants Ira Handy, Handy's Moisture and Pest Control, Ron

Platt, Marsha Platt, and Sonny Ninan.  (*See* Doc. No. [144].)

After the court entered this order, it appeared that Plaintiff had filed objections to all

three Reports and Recommendations.  Although it is not clear exactly when Plaintiff filed his

objections, they were timely filed.  Thus, in an order dated April 8, 2008, the court vacated its

order dated March 26, 2008 and reinstated the matter for consideration of Plaintiff's objections.

## **BACKGROUND**

Plaintiff filed the instant suit on August 2, 2006, and although he is an inmate at the Tyger

River Correctional Institution, the case *sub judice* does not appear to be related to his confinement.[3]

Rather, the allegations of Plaintiff's Complaint concern real estate transactions in which he was

involved in Greenville County in 2004, prior to his incarceration.  Before being incarcerated,

Plaintiff was a residential building contractor in Greenville County, and he purchased three vacant

---

[3]Unless otherwise noted, the court has quoted Plaintiff's statements verbatim.

lots in the River Run subdivision in Greenville County from Liberty Funding, Inc., in 2004. The Defendants in this case were involved in the financing, construction, and litigation surrounding the purchase of these three lots and construction of dwellings on two of them.

When Plaintiff purchased these three lots in the River Run subdivision, his stated purpose was to build houses on the lots for resale.[4] Plaintiff borrowed the purchase money for the lots from Luthi Mortgage Company, and Plaintiff also borrowed money to pay the cost of construction. Each loan was secured by a mortgage. Plaintiff purchased River Run lot number 19 on February 26, 2004, and the total amount of the loan was $82,099.20, of which $49,080.00 was available for draws as construction progressed. All of these draws were advanced to Plaintiff by April 4, 2004. On June 29, 2004, Luthi Mortgage Company filed a Lis Pendens and a Summons and Complaint seeking to foreclose for violating the terms of the note and mortgage. The Master in Equity for Greenville County granted judgment against Jones, and the property was sold to Luthi Mortgage Company at auction.[5]

_____

[4]As the Magistrate Judge noted in one of his R&Rs, much of this information comes from the affidavit of Perry S. Luthi, Sr. Because this is one of the few places where information is collected coherently, the court refers to it as well. It is clear, however, that Plaintiff disputes some of the facts in this affidavit, and the court has attempted to note those disputes.

Plaintiff asserts that the court should not consider Defendants' Motion for Summary Judgment or the affidavit of Perry S. Luthi, Sr. because those two documents "explicitly referenced 'a case number' not assigned to this case." (Objections at 9.) The court has reviewed these documents, and quite simply, Plaintiff is incorrect–the correct case numbers appear on these documents. Perhaps Plaintiff refers to the fact that the documents say "JPM" instead of "JRM." However, the documents have obviously been filed in the correct case, and the case number of 6:06-2202 is correct.

[5]It appears Plaintiff takes issue with an order of the Court of Common Pleas for the County of Greenville. On December 6, 2004, the Honorable Charles B. Simmons, Master in Equity for Greenville County, signed an order with respect to lot number 19 that stated,

13. The amount due and owing on the Note, with interest at the rate provided in the Note, and other costs and expenses of collection, including an attorney's fee

4

Plaintiff purchased River Run lot number 5 on March 11, 2004. The total loan was $80,462.55, of which $51,960.00 was available for draws as construction progressed. There appears to be a dispute concerning the remainder of the facts about lot number 5. An affidavit of Mr. Luthi, Sr., indicates that none of the construction money was advanced since work never began on the planned house, and Jones signed a deed to Luthi Mortgage Company in lieu of foreclosure on May 10, 2005. (*See* Luthi Aff.) However, Plaintiff submits in his Objections that he could not have signed a deed to Luthi Mortgage Company on May 10, 2005, because he was incarcerated at that time. (Objections at 10.) He also states, "[H]ad the Plaintiff signed any transfer of any property in lieu, to Luthi Mortgage Company, it was certainly not voluntarily and without any compensation whatsoever." (*Id.*)

Plaintiff purchased River Run lot number 10 on April 26, 2004. The total loan was $80,462.55, of which $51,960.00 was available for draws as construction progressed. Of those

---

secured by the Note and Mortgage, is as follows:

| | |
|---|---|
| (a) Principal due 04/18/03 | $84,138.70 |
| (b) Interest through 12/06/04 @ 18% | 11,157.16 |
| (c) Advancements | 1,084.64 |
| (d) Cost of collection prior to hearing | 550.00 |
| (e) Attorney's fees | 2,500.00 |

TOTAL DEBT secured by Note and Mortgage including interest to date shown $99,430.50.

Plaintiff asserts this transaction could not have taken place prior to February 6, 2004, and the loan amount and the total funds disbursed are in dispute. (Objections at 13.) Plaintiff further states,

That Mr. Luthi personally spoke with Marsha Platt prior to any foreclosure, and advised Mrs. Platt not to honor purchase agreement with the Plaintiff, "that he (Luthi) would be foreclosing real soon." This occur on the property of Lot #19 River Run, October 2004.

(*Id.*)

5

construction funds, $24,061.60 was drawn, with the final draw occurring on November 4, 2004.[6]

Further draws were denied for lack of progress on the house and because mechanic liens revealed

the money previously advanced had not been used to pay subcontractors and vendors as required.

Luthi Mortgage Company filed a Lis Pendens and a Summons and Complaint seeking to foreclose

on the property on December 16, 2004.  The Master in Equity for Greenville County granted

judgment against Plaintiff, and the property was sold to Luthi Mortgage Company at auction on June

30, 2005.[7]

    As the Magistrate Judge noted in his R&R of February 15, 2008, the Complaint is jumbled,

and it is difficult to ascertain Plaintiff's claims and to determine against which defendant or

defendants the claims are alleged.  (*See* Compl.; *see also* R&R dated Feb. 15, 2008, at 3.)  In the

"Jurisdiction" section of his Complaint, Plaintiff lists several federal statutes: 42 U.S.C. § 1983; the

Racketeer Influenced and Corrupt Organization ("RICO") Act; Truth in Lending Act; Federal Trade

Commission Act; Clayton Act; Sherman Antitrust Act; the mail fraud statute; the wire fraud statute;

---

    [6]In his Objections, Plaintiff states that "he or his associates completed the construction on this house well beyond the $24,061.00."  (Objections at 10.)

    [7]With respect to lot number 10, the Honorable Charles B. Simmons, Master in Equity for Greenville County, signed an order dated April 25, 2005 that stated,

> 12.  The amount due and owing on the Note, with interest at the rate provided in the Note, and other costs and expenses of collection, including an attorney's fee secured by the Note and Mortgage, is as follows:

|  |  |
|---|---|
| (a) Principal due 04/18/03 | $55,762.15 |
| (b) Interest through April 25, 2005 @ 18% | 7,202.59 |
| (c) Advancements | 300.00 |
| (d) Attorney's Fee | 2,500.00 |

> TOTAL DEBT secured by Note and Mortgage including interest to date shown $65,764.74.

Plaintiff again asserts that there was no loan in effect as of April 18, 2003.  (Objections at 11.) He asserts the "only lawful amount the [P]laintiff was indebted to the defendants concerning this transaction was $24,061.60 November 4, 2004."  (*Id.*)

and the Real Estate Settlement Procedures Act ("RESPA").  (*See* Compl.)  There is a section of the Complaint entitled "Complaint on Promissory Note," wherein Plaintiff demands judgment against the Defendants in the amount of $560,000, plus interest and costs, asserting the defendants owe him the amount of all three notes as well as any improvements on the three lots.  (Compl. at 9.)  Another section of the Complaint is entitled "Petition for Declaratory Judgment," and that section "demands a declaratory judgment against defendants for the sum of $560,000.00 plus interest and costs."  (*Id*. at 10.)  The Complaint also lists the following causes of action: (1) fraud; (2) civil conspiracy; (3) misrepresentation; (4) extortion; (5) deceit; and (6) violation of fiduciary duty.  (*See* Compl.)

Many motions are currently pending in this case.  On November 14, 2006, Plaintiff filed a Motion to Certify Class, and a Response in Opposition was filed on December 14, 2006.  (*See* Doc. Nos. [33] and [49].)  Also on November 14, 2006, Plaintiff filed a Motion for Default Judgment as to Ira Handy, Handy's Moisture and Pest Control, and Sonny Ninan.  (*See* Doc. No. [35].)  Plaintiff then filed a Motion for Default Judgment as to Ira Handy, Handy's Moisture and Pest Control, Sonny Ninan, Ronald Platt, and Marsha Platt on December 20, 2006.  (*See* Doc. No. [56].)  Plaintiff has filed several Motions for Summary Judgment.  On February 14, 2007, he filed a Motion for Summary Judgment as to Carol Simpson; a separate Motion for Summary Judgment as to Ira Handy and Handy's Moisture and Pest Control; and yet another Motion for Summary Judgment as to Sonny Ninan, Ronald Platt, and Marsha Platt.  (*See* Doc. Nos. [67], [68], and [69].)  On February 22, 2007, Plaintiff filed a Motion for Partial Summary Judgment with respect to all defendants represented by Melvin Hutson, meaning Perry S. Luthi, Sr., Desmine Sartain, Luthi Mortgage Company, Carolina Tax Service, Luthi Construction Company, Liberty Funding, General Funding, Perry S. Luthi, Jr., Martha Pace, Lori Murphy, Pete Peterson, Michael Doe, Dee Dee Doe, and Kim Doe.  (*See* Doc.

No. [70].)

Defendants Perry Luthi, Sr., Desmine Sartain a/k/a Dee Dee Sartain, Luthi Mortgage Company, Carolina Tax Service, Luthi Construction Company, Liberty Funding, General Funding, Perry S. Luthi, Jr., Martha Pace, Lori Murphy, Pete Peterson, Michael Hulbert, and Kimberly Ray filed a Motion for Summary Judgment on February 26, 2007. (*See* Doc. No. [71].)[8] Plaintiff filed a Response in Opposition to this motion on March 8, 2007. (*See* Doc. No. [75].) Two other motions were filed before the Magistrate Judge issued his final R&R: (1) Plaintiff's Motion for Judgment as a Matter of Law as to Sonny Ninan, Marsha Platt, Ronald Platt, Ira Handy, and Carol Simpson; and (2) Plaintiff's Motion for Writ of Mandamus. (*See* Doc. Nos. [82] and [92].)

Magistrate Judge McCrorey filed his first of three Reports and Recommendations on February 7, 2008, in which he recommended that Plaintiff's Motion to Certify Class be denied. (*See* Doc. No. [125].) Magistrate Judge McCrorey recommended denying this motion for two reasons: (1) because Plaintiff failed to serve a copy of the motion on Defendants as required by Rule 5 of the Federal Rules of Civil Procedure and (2) because a pro se party lacks standing to assert claims on behalf of others. (*See* R&R dated February 7, 2008, at 1.) The R&R dated February 11, 2008, recommended that Plaintiff's Motions for Summary Judgment with respect to Defendants Carol Simpson, Ira Handy, Handy's Moisture and Pest Control, Sonny Ninan, Ronald Platt, and Marsha Platt be denied. (*See* Doc. No. [127].) The Magistrate Judge recommended these motions be denied for two reasons. First, Plaintiff did not show that he served a copy of his motions on the Defendants. (*See* R&R dated Feb. 7, 2008, at 1.) Second, "Jones' motions for summary judgment do not comply

---

[8] While the court notes that not all Defendants joined in this Motion for Summary Judgment, the court refers to this motion as "Defendants' Motion for Summary Judgment."

with" Rule 56 of the Federal Rules of Civil Procedure. (*Id.* at 2.) Magistrate Judge McCrorey stated, "The motions contain some general factual assertions but do not specifically identify claims asserted against specific parties, do not discuss the elements of those claims, and which purported facts support those claims. Thus, Jones' motions fail to show the absence of material facts supporting his claims [sic]." (*Id.*)

In his R&R dated February 15, 2008, Magistrate Judge McCrorey made several recommendations which, if followed, would ultimately dispose of the case. Magistrate Judge McCrorey recommended that Plaintiff's Motion for Partial Summary Judgment with respect to his claims pursuant to the Truth in Lending Act be denied and Defendants' Motion for Summary Judgment on this claim be granted because this Act "does not cover the three loan transactions about which Jones complains." (R&R dated Feb. 15, 2008, at 4.) To the extent that Plaintiff asserts causes of action for violation of the mail fraud statute (18 U.S.C. § 1341), the wire fraud statute (18 U.S.C. § 1343), and the Federal Trade Commission Act, Magistrate Judge McCrorey recommended that the Defendants' Motion for Summary Judgment be granted because these statutes do not provide a private cause of action to individuals. (*Id.* at 4-5.) With respect to his asserted cause of action pursuant to 42 U.S.C. § 1983, the Magistrate Judge concluded that Plaintiff could not proceed under that statute because he has not shown that any of the Defendants were state actors. (*Id.* at 5.) While Plaintiff seemingly asserted causes of action for violations of the Sherman Antitrust Act and the Clayton Act, the Magistrate Judge concluded that Plaintiff failed to produce any evidence that he suffered an antitrust injury and thus could not proceed on those claims. (*Id.* at 6.) To the extent Plaintiff asserts claims for violations of RESPA, the Magistrate Judge concluded Plaintiff cannot proceed because Plaintiff "does not allege, and there is no evidence, that these were 'federally

9

related mortgage loans' subject to RESPA."  (*Id*. at 7.)

Magistrate Judge McCrorey then addressed Plaintiff's allegations that the Defendants violated RICO.  After noting "[t]here is little in the complaint or in the record to define this claim," the Magistrate Judge further noted that Plaintiff did not indicate whether his RICO claim was pursuant to 18 U.S.C. § 1962 (a), (b), (c), or (d).  (*Id*. at 8.)  The Magistrate Judge interpreted Plaintiff's RICO allegations to be pursuant to § 1962(c) but concluded the cause of action should be dismissed because (1) Jones failed to show interstate nexus, and (2) Jones has not adequately pled a pattern of racketeering activity.  (*Id*. at 10.)

Turning to Plaintiff's claims pursuant to the law of South Carolina, Magistrate Judge McCrorey stated, "Three of these alleged causes of action (misrepresentation, extortion and deceit) do not appear to be torts under South Carolina law."  (*Id*. at 11.)  With respect to the remaining state law claims (for fraud, civil conspiracy, and breach of fiduciary duty), the Magistrate Judge concluded the claims involving lots 19 and 10 are barred by the doctrine of *res judicata*, as Plaintiff "could have raised all the issues he raises in this court as defenses in the foreclosure actions."  (*Id*. at 12.)  Lot 5 was not foreclosed upon, but "[t]here is no evidence of damage, much less special damage, to Jones with respect to Lot 5."  (*Id*.)  As civil conspiracy was the only claim Plaintiff specifically alleged with respect to Lot 5, the Magistrate Judge concluded the Defendants are entitled to summary judgment.  (*Id*.)[9]

Given that Jones "appears to misunderstand the purpose and function" of a declaratory judgment, in that he seeks money damages, the R&R states that "the court should exercise its

---

[9]In the alternative, the Magistrate Judge recommended that because Plaintiff failed to show the Defendants violated his rights under federal law, Plaintiff's remaining state law claims should be dismissed pursuant to 28 U.S.C. § 1367(c)(3).  (R&R dated Feb. 15, 2008, at 13.)

discretion and dismiss Jones' claim for a declaratory judgment." (*Id*. at 13.)

Finally, with respect to Plaintiff's Motions for Default Judgment against Ira Hardy, Hardy's Moisture and Pest Control, Sonny Ninan, Ron Platt, and Marsha Platt, the Magistrate Judge recommended denying these motions as well as Plaintiff's Motion for Writ of Mandamus. (*Id*.) Magistrate Judge McCrorey concluded that Ira Handy, Handy's Moisture and Pest Control, Ron Platt, and Marsha Platt "were properly served and have not appeared in the case." (*Id*.) However, the Magistrate Judge recommended this court exercise its discretion and not impose default judgment against these defendants in light of the fact that he recommended granting the motion for summary judgment of the answering defendants. (*Id*. at 14.)

After Magistrate Judge McCrorey issued these three Reports and Recommendations, Plaintiff filed two additional motions: a Motion to Amend Complaint [148] and a Cross-Motion for Summary Judgment [150].

## STANDARD OF REVIEW

**A.     Magistrate Judge's R&R**

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R.  28 U.S.C. § 636(b)(1).  After a review of the entire record, the three Reports and Recommendations, and Plaintiff's Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law.  The court adopts and fully incorporates into this order the Reports and Recommendations filed on February 7, 2008 (Doc. No. [125]) and February 11, 2008 (Doc. No. [127]).  However, because the court dismisses Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3) and

slightly modifies the analysis pursuant to the Truth in Lending Act, the court adopts the Report and Recommendation filed on February 15, 2008, (Doc. No. [129]) to the extent it is consistent with this order.

## B.     Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327.

## <u>ANALYSIS</u>

Plaintiff has filed approximately sixty pages of objections in this case, and he also attaches

an "affidavit of rebuttal by Christopher Jones." The court will address some preliminary objections that seem to pertain to the Reports and Recommendations as a whole and then address the objections pertaining to the individual claims.

## A.    Generalized Objections

Plaintiff first objects to mere fact that the Magistrate Judge filed a Report and Recommendation "at this late date." (Objections at 1.) He states (verbatim),

> The Plaintiff assert[s] that his Complaint does not fall within the provisions giving the United States Magistrate authority, to, in all reality, recommend sua sponte dismissal of Plaintiff's Complaint. Plaintiff's Complaint is not frivolous, malicious nor wholly incredible. The required basis for sua sponte dismissal. The allegations raised by the Plaintiff, if proven true, would constitute valid grounds for relief under the Law.

(*Id*. at 1-2.) Plaintiff also "objects extensively to the filing of the Report and Recommendations, specifically asserting claims and defenses for defendant parties." (*Id*. at 2.)

It is true that most of the motions at issue in this case were filed some time ago, the earliest being the Motion to Certify Class filed on or about November 14, 2006. However, while Plaintiff seems to suggest that the court simply declined to address his motions for an extended period of time, this is not the case. After the motions at issue in the three R&Rs had been filed, but before the court could rule on them, Plaintiff filed a Notice of Interlocutory Appeal. After the United States Court of Appeals for the Fourth Circuit entered its judgment, the Reports and Recommendations were filed shortly thereafter. Plaintiff's assertion that a Report and Recommendation is inappropriate at this time is thus without merit. *Cf. Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance–it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). While a stay was not ordered in this case, it was not

13

erroneous for the court to refrain from taking action while the appeal was pending.  *See Hill v. PeopleSoft USA, Inc.*, 341 F. Supp. 2d 559, 561 (D. Md. 2004) ("Although this Court will not issue a stay of all proceedings, it is mindful of the undesirable consequences of a ruling on the merits prior to a decision regarding arbitration by the higher court.")

Furthermore, to the extent Plaintiff is objecting to the Reports and Recommendations due to the Magistrate Judge's alleged bias, that objection is wholly without merit.  Plaintiff offers no evidence or allegation that the Magistrate Judge is biased against him other than the fact that the Magistrate Judge recommended denying Plaintiff's Motions for Summary Judgment.  The fact that the Magistrate Judge recommended ruling against Plaintiff, however, is no indication of bias.  *See Dunlap Corp. v. Deering Milliken, Inc.*, 400 F. Supp. 497, 514 (D.S.C. 1975) (stating, in the context of a recusal motion, that bias and prejudice of a trial judge "must be based on something other than rulings in the particular case or the words the judge uses in setting forth his rulings"); *see also Consolidation Coal Co. v. Williams*, 453 F.3d 609, 620 (4th Cir. 2006) (the Board properly affirmed the Administrative Law Judge's decision declining to recuse himself because "'judicial rulings alone almost never constitute a valid basis for a bias or partiality ruling'" (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))).  Plaintiff's objection is thus without merit.

Plaintiff also asserts the Magistrate Judge had no authority to recommend sua sponte dismissal of Plaintiff's Complaint.  An examination of the record reveals that the Magistrate Judge did not recommend sua sponte dismissal of Plaintiff's Complaint.  Rather, the Magistrate Judge issued the three R&Rs in which he recommended rulings to the district judge on motions pending

in the case.[10]  Title 28, United States Code, Section 636(b) states,

> **(b)(1)** Notwithstanding any provision of law to the contrary–
>> **(A)** a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.  A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.
>> **(B)** a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.
>> **(C)** the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.
>
> Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court.  A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b).  The court concludes the procedure used in this case complies with the mandates

in 28 U.S.C. § 636(b), as the recommendations of the Magistrate Judge have been submitted to the

undersigned for ultimate disposition.  *See Harley v. United States*, 349 F. Supp. 2d 980 (M.D.N.C.

---

[10]The court notes that the Magistrate Judge did recommend that summary judgment be granted sua sponte as to all claims against Carol A. Simpson, Ira Handy, Handy's Moisture and Pest Control, Ron Platt, Marsha Platt, and Sonny Ninan.  The court will specifically address this recommendation later in the order when addressing Plaintiff's objections concerning the recommendation to deny Plaintiff's Motions for Default Judgment.

2004) (adopting a magistrate judge's recommendation to dismiss a prisoner's pro se complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) for being frivolous or malicious or failing to state a claim upon which relief may be granted); *Stevens v. Meacham*, No. C/A 3:02-2882-22BC, 2003 WL 23851102, at *1 (D.S.C. Sept. 17, 2003) (adopting the findings of the Magistrate Judge and dismissing a specific defendant *sua sponte* pursuant to Rule 4(m) of the Federal Rules of Civil Procedure because the plaintiff had not shown the defendant had been served); *see also United Auto Workers, Local No. 5285 v. Gaston Festivals, Inc.*, 43 F.3d 902, 905-06 (4th Cir. 1995) (affirming *sua sponte* dismissal of a § 1983 complaint for failure to state a claim under Rule 12(b)(6)); *Cabbagestalk v. Miller*, No. CIVA 3:06-1125 SBJRM, 2007 WL 172507, at *2 (D.S.C. Jan. 17, 2007) (dismissing a plaintiff's § 1983 complaint *sua sponte* where the complaint clearly revealed that the inmate had not exhausted his administrative remedies). The court concludes Plaintiff's objection has no merit.[11]

---

[11]In his Objections, Plaintiff states that he is pro se and that "assuming that the allegations stated in the Complaint are true," he is entitled to relief. (Objections at 2.) It appears Plaintiff is confusing the standard for a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure with the standard for a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Procedure. As the Supreme Court recently stated in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007),

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 127 S. Ct. at 1964-65 (citations omitted). Prior to *Twombly*, *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), set the standard that a court should grant a motion to dismiss pursuant to Rule 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Summary judgment, however, is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he party seeking summary judgment

One of Plaintiff's fundamental objections is to the Magistrate Judge's recommendations concerning certain Defendants who did not answer, and many of his other objections concern his state law claims. Because the court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, the court will address the objections concerning Plaintiff's federal claims first.

## B.     Objections Concerning RICO

As noted above, the Magistrate Judge recommended granting summary judgment to all Defendants on Plaintiff's claim pursuant to RICO, stating that Plaintiff (1) failed to show an interstate nexus and (2) failed to adequately plead a pattern of racketeering activity. (*See* R&R dated Feb. 15, 2008 at 10.) "Civil RICO is a statutory tort remedy that allows a private party to recover for injuries caused by a violation of RICO criminal provisions." *Buchanan County, Va. v. Blankenship*, 496 F. Supp. 2d 715, 718 (W.D. Va. 2007) (citing *Chisolm v. TranSouth Fin. Corp*., 95 F.3d 331, 336 (4th Cir. 1996)); *see also* 18 U.S.C. § 1964(c). Subsection (c) of § 1964 states that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . ." As the Magistrate Judge noted, the prohibited activities are defined by § 1962, which provides:

> **(a)** It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting

---

bears an initial burden of demonstrating the absence of a genuine issue of material fact."
*Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 521-22 (4th Cir. 2003) (citing
*Celotex*, 477 U.S. at 323).

another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

**(b)** It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

28 U.S.C. § 1962.

The Magistrate Judge concluded it was unclear which subsection Plaintiff alleged had been violated, but the Magistrate Judge analyzed the claim pursuant to § 1962(c). In his Objections, Plaintiff acknowledges the appropriate analysis is under § 1962(c). (*See* Objections at 29.) To state a claim under § 1962(c), Plaintiff must allege that "(1) a defendant person (2) employed or associated with (3) an enterprise, engaged in, or the activities of which affect, interstate or foreign commerce, (4) conducts or participates in the conduct of the affairs of the enterprise (5) through a pattern of racketeering activity." *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 295-96 (D.S.C. 1999) (citing 18 U.S.C. § 1962(c)); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."). Section 1962(c) prohibits a person employed or associated with an enterprise from conducting that enterprise thorough a pattern of racketeering activity. *See Palmetto*

*State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997). It is also required that "[t]he enterprise . . . be distinct from the persons alleged to have violated § 1962(c)." *Id.*; *see also New Beckley Mining Corp. v. Int'l Union, United Mine Workers of America*, 18 F.3d 1161, 1165 (4th Cir. 1994).

A "pattern" under § 1962(c) is established when there exists "at least two separate predicate acts of racketeering activity which are related and either amount to or pose a threat of continued criminal activity." *Toucheque v. Price Bros. Co.*, 5 F. Supp. 2d 341, 345 (D. Md. 1998) (citing *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Palmetto State Med. Ctr.*, 117 F.3d at 148). In a 1995 opinion, the United States District Court for the Eastern District of Virginia explained,

> In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), the United States Supreme Court considered the "pattern of racketeering activity" requirement. The Court noted that the statute "requires" two acts of racketeering activity, "not that it 'means' two such acts. The implication is that while two acts are necessary, they may not be sufficient." *Id.* at 496 n.14. In determining whether predicate acts constitute a pattern under RICO, the United States Court of Appeals for the Fourth Circuit has stated that "we have deliberately declined to adopt any mechanical rules to determine the existence of a RICO pattern, holding instead that the issue is a 'matter of criminal dimension and degree' to be decided on a case-by-case basis." *Brandenburg v. Seidel*, 859 F.2d 1179, 1185 (4th Cir. 1998) (quoting *Zepkin*, 812 F.2d at 155). The court may consider a number of factors: "the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries." *Id.*; *see also HMK Corp. v. Walsey*, 828 F.2d 1071, 1075 (4th Cir. 1987), *cert. denied*, 484 U.S. 1009 (1988) (holding no pattern existed where span of predicate acts was caused by the nature of the process). Additionally, to constitute a pattern under the RICO statutes, the predicate acts must reflect "relationship" and "continuity." *Sedima*, 473 U.S. at 496 n.14; *Brandenburg*, 859 F.2d at 1185.

*Davis v. Hudgins*, 896 F. Supp. 561, 568 (E.D. Va. 1995).

As the Magistrate Judge noted in the R&R, the references to RICO in the Complaint are sparse. In a section entitled "Jurisdiction," Plaintiff states that federal jurisdiction "is . . .

accomplished pursuant to . . . RICO § 18 U.S.C. 196-1968 . . ." (Compl. at 6.)  His second mention

of RICO states, "Fact that the plaintiff now raise various causes of action against the defendants

and/or their agents or representatives for the following, including breach of contract, fraud, deceit,

. . . elements of RICO, mail fraud, . . ." (*Id*. at 11.)  Under the heading of a cause of action for

"violation of fiduciary duty," Plaintiff alleges "[t]hat defendant companies are established as a

unified organization structure, and thus, fulfill the prerequisites [o]f RICO." (*Id*. at 18.)  There are

no further explanations in the Complaint as to how Defendants are liable to Plaintiff pursuant to

RICO.

In his Objections, Plaintiff extensively discusses his RICO claim in approximately twenty

pages.  He states, *inter alia*,

> Defendants' devised scheme begins at the inception of an agreement to
> purchase land owned by the Lender, Perry S. Luthi, Sr., or one of the entities owned
> by the same.  The Lender falsely states in the Promissory Note "For Value
> Received," which is all done at the closing of what appears to be and represented as
> conventional individual mortgages whereby some funds would normally be
> distributed at that time.  However, the Lender never distributed funds to the
> [P]laintiff, as stated in the Promissory Note, in fact, the Promissory Note only served
> the purpose of the Lender.  The Promissory Note is very ambiguous and misleading.
> The plaintiff/contractor would only receive funds much later in the form of actual
> reimbursements, and after having initiated substantial personal investment into the
> project.

(Objections at 24-25.)  Plaintiff describes the alleged scheme as follows:

> Defendant Perry Luthi, Sr. would often approve only a portion of the funds earned
> by the plaintiff/contractor to advance to the next stage of the project.  This was
> critical because it was designed to stagnate the funding process.  Defendant Perry
> Luthi, Sr. objective would be to cripple the plaintiff/contractor by withholding funds
> due so that subcontractors and/or vendors would move to file liens to authorize a
> work stoppage allowing defendant Perry S. Luthi, to not advance or pay any further
> funds.  This creates a vacuum to seal-off any real possibility of satisfactory
> completion of the project so that one of the auxiliaries of defendant Perry Luthi, Sr.
> inherits the project, instead of plaintiff or any possible sell.  This is a bona-fide
> scheme repeated over and over because of its likely success.  In sum, prior to

20

> completion, the Lender would have the plaintiff/contractor boxed in and unable to proceed to pay subcontractors, vendors, or suppliers, . . . liens soon followed, Lender moves for foreclosure. Therefore, as a result the plaintiff/contractor could not obtain any financial relief against the real value of the properties/projects.

(Objections at 25-26.)  He asserts that "[m]ortgages were filed against the properties before any construction began," seemingly asserting that such action was improper.  (*Id*. at 27.)  He further states that "Luthi Mortgage Company prematurely filed foreclosures . . . without any prior notice to the borrower" and that Luthi Mortgage "charged princip[al] and interests beginning **one year** prior to any loans being initiated by the parties with one another."  (*Id*.)  Plaintiff also asserts the "defendants illegally collected excessive insurance premiums during and after the contract periods . . ." (*Id*. at 28.)  On page thirty-seven of his Objections, he states, "Returning to the RICO claims, [n]ow the plaintiff further allege that it was the policy and practice" of Luthi Mortgage; Perry S. Luthi, Sr.; Liberty Funding; and General Funding to do things such as "[t]o demand payment of interest on monies held by the defendants through the relevant loan periods."  (*Id*. at 37.)

As noted, Magistrate Judge McCrorey recommended granting Defendants' Motion for Summary Judgment with respect to Plaintiff's RICO claim, stating that Plaintiff (1) failed to show an interstate nexus and (2) failed to adequately plead a pattern of racketeering activity.  Plaintiff seemingly objects to both of those recommendations.  He first asserts that he did not fail to show an interstate nexus.  He states,

> Here, the plaintiff . . . hereupon allege the following elements of RICO.  The defendants engaged in Mail Fraud, 18 U.S.C. § 1343, (1982) which is one of the predicate offenses listed in section 1961(1)(B).  Defendants mail fraudulent foreclosure materials which were published in the local newspapers. Defendants also illegally filed premature fraudulent liens with the Register of Deeds which published this information at Columbia, S.C.  The mail trucks transferred this information which affected interstate commerce.  Further, these defendants committed Wire Fraud, 18 U.S.C. § 1343 and . . . Bank Fraud, 18 U.S.C. § 1344 of section 1961(1)(B).

21

(Objections at 31.)  In addition, Plaintiff states, "Plaintiff, which in its § 1962(c) civil RICO suit alleged that the defendants used instrumentality of interstate commerce, the United States Postal Service, to execute their fraudulent scheme."  (*Id*. at 33.)

Plaintiff also objects to the Magistrate Judge's determination that he failed to adequately plead a pattern of racketeering activity.  He states,

> Evidence is sufficient to establish that racketeering predicate of mail fraud perpetuated as part of scheme to defraud were related and pose threat of continual criminal enterprise (activity), thus satisfying RICO pattern requirement; related vendor, purchasers, (Platts), and lender were involved in the separate developments that culminated in lender foreclosing on its . . . mortgages.  Same vendors, subcontractors and purchasers were involved in sales of all lots, with sales being finance by same lender, which filed its mortgages began [sic] any work began. Defendants used after-acquired collateral to secure note.  Defendants never made any reference to after-acquired collateral in their Promissory Notes, or mortgages.

(Objections at 32.)  Plaintiff asserts he has

> demonstrated at least the necessary two predicate acts by: (1) [Luthi's] having day to day control of Jones, (2) collection of an unlawful debt, (3) affected interstate commerce, (Indemnity Insurance of Illinois; (4) formed a conspiracy; (5) use of the mails and wire to further the conspiracy; (6) use of federally insured financial institution to further scheme; (7) charging unlawful, usurious rates not agreed upon; (8) charging interest on money never released by the Lender to the borrower; (9) use of strong-arm tactics to force Jones to convey ownership interest in property (Lot #5) to Luthi without any compensation.

(*Id*. at 38.)

The number of allegations concerning RICO has thus jumped considerably, from three mere references to the statute to approximately twenty pages of specific allegations.  It does not appear, however, that the allegations in the Objections are submitted in affidavit form or under penalty of perjury.  Plaintiff did attach the "Affidavit of Rebuttal by Christopher Jones," but this is a three-page document that simply seems to rebut several of the statements Perry S. Luthi, Sr. made in his affidavit.  Simply put, the new allegations (not even submitted in the form of evidence) are so far-

22

reaching that the court must interpret them as a Motion to Amend.

This court considered a Motion to Amend in *King v. Marriott International, Inc.*, No. 9:05-1774-PMD-RSC, 2006 WL 2092592 (D.S.C. July 26, 2006). The plaintiff in that case filed his suit in June of 2005, and a scheduling order was issued in August of 2005 that provided motions to amend pleadings should be filed no later than October 17, 2005. *King*, 2006 WL 2092592, at *1. Then, in April of 2006, approximately three weeks before the close of discovery, the plaintiff filed a motion to amend his complaint to include an age discrimination claim. *Id.* The Magistrate Judge analyzed the motion only pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, and although he determined that although there had been substantial delay and prejudice that was "not slight," he granted the Motion to Amend. *Id.* The defendant appealed the Magistrate Judge's order to the district court, and the district court vacated the Magistrate Judge's order, concluding he applied the wrong standard. *Id.* at *3. The district court stated,

> Generally, motions to amend a pleading are governed by Rule 15(a) of the Federal Rules of Civil Procedure. However, when a scheduling order has been entered, as is the present case, Rule 16(b), which governs modification to a scheduling order, is first implicated. *See, e.g., O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154-55 (1st Cir. 2004) (noting that "Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s 'freely given' standard, governs motions to amend filed after scheduling order deadlines.") Thus, when granting a motion to amend would require modifying a district court's scheduling order, Rule 16(b) of the Federal Rules of Civil Procedure requires that the movant must first show "good cause." *See Vercon Construction, Inc. v. Highland Mortgage Co.*, 2006 WL 1747115, at *1 (4th Cir. June 20, 2006) (unpublished) ("Ordinarily, leave to amend is to be 'freely given when justice so requires.' However, when granting leave to amend, as was the case here, would require modifying the district court's scheduling order, Federal Rule of Civil Procedure 16(b) requires that the movant must first show good cause.") (internal citations omitted). Accordingly, "Plaintiff first must satisfy the good cause standard of Rule 16(b) and, if successful, then must pass the tests for amendment under Rule 15(a)." *Comp USA v. IBM Corp.*, 2004 WL 1459272, *2 (D. Md. June 29, 2004) (unpublished) (citing *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373 (D. Md. 2002)); *see also DilmarOil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997) ("Once a scheduling order's deadline for amendment

of pleadings has passed, a movant must *first* demonstrate to the court that it has a 'good cause' for seeking modification of the scheduling deadline under Rule 16(b). If the movant satisfies Rule 16(b)'s 'good cause' standard, it must **then** pass the requirements for amendment under Rule 15(a).") (emphasis in original).

*King*, 2006 WL 2092592, at *2.

The case *sub judice* was filed on or about August 3, 2006, and a scheduling order was entered on October 12, 2006. That scheduling order provided that amended pleadings were due by November 13, 2006, and motions were due by February 26, 2007. (*See* Doc. No. [13].) On or about November 9, 2006, Plaintiff filed a Motion for and Enlargement of Time in which to file amended pleadings, seeking an extension of at least twenty days. (*See* Doc. No. [32].) In an order dated November 16, 2006, Magistrate Judge McCrorey denied that motion, stating,

> Jones has moved to enlarge the time for amending his pleadings and adding new parties. The motion does not comply with Local Rule 6.01 (D.S.C.). Even though Jones states that the enlargement is necessary "due to extensive discovery and the likeliness that other Defendants, and/or Plaintiffs may be added to this action," he does not describe what discovery he has accomplished or contemplates or identify possible other parties. Amendments to pleadings are governed by Fed. R. Civ. P. 15.

(Doc. No. [36] at 3-4.) Plaintiff also filed a Motion to Amend on or about May 1, 2007, but that motion was denied in an order dated June 28, 2008, because Magistrate Judge McCrorey concluded the Defendants would be unduly prejudiced by the proposed amendment. (*See* Doc. No. [97] at 2.)

The court concludes that Plaintiff should not be allowed to amend his Complaint at this late date. First, Plaintiff has not shown good cause pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. This case has been pending since August of 2006; discovery was due on February 9, 2007; and the several Motions for Summary Judgment were filed as early as February of 2007. The discovery deadline thus passed over a year ago, and some of the Motions for Summary Judgment have been pending since then. The court concludes Plaintiff has not demonstrated the reasons for

the tardiness of all his new allegations, and the court therefore finds that good cause has not been demonstrated. *See United States v. Godwin*, 247 F.R.D. 503, 508 (E.D.N.C. 2007) (denying the government's motion to amend because it could not show "good cause" where it failed to show "that the scheduling order's deadline for the amendment of pleadings [could not] be reasonably met despite its diligence"); *Rassoull*, 209 F.R.D. at 374 (noting the "'good cause' standard focuses on the timeliness of the amendment and the reasons for its tardy submission"). Furthermore, the court notes that even if good cause had been shown, the amendment would not be allowed pursuant to Rule 15(a) of the Federal Rules of Civil Procedure because the court concludes such amendment would prejudice the Defendants.[12]

Thus, looking at the allegations in the Complaint and considering the evidence properly in the record, the court concludes the Magistrate Judge properly recommended granting Defendants' Motion for Summary Judgment with respect to Plaintiff's RICO claim. First, this court concludes that Plaintiff did not sufficiently allege a violation of RICO pursuant to Rules 8 and 9 of the Federal Rules of Civil Procedure, as it is impossible to determine from a reading of his Complaint exactly how Defendants allegedly violated RICO. *See Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 280 (S.D.N.Y. 1991) (dismissing the RICO counterclaims pursuant to Rule 9(b) of the Federal Rules of Civil Procedure); *O'Neill v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 84 C 3181, 1984 WL 3653 (N.D. Ill. Oct. 29, 1984) ("The complaint is dismissed for failure to comply with Rules 8 and 9(b) of the Federal Rules of Civil Procedure and for failure to allege the necessary elements of a RICO action.").

---

[12]The court therefore denies Plaintiff's Motion to Amend filed on or about March 27, 2008.  (*See* Doc. No. [148].)

Second, as the Magistrate Judge stated in the R&R, Plaintiff has not shown an interstate nexus, but even if he has, he has certainly failed to show a pattern of racketeering activity.  The only allegations in the Complaint concern three loans made over a two-month period by Luthi Mortgage Company (with involvement of various other Defendants), and it is very difficult to ascertain from Plaintiff's Complaint (and even his Objections) exactly what conduct Plaintiff asserts should give rise to RICO liability.  For example, he asserts Defendants filed mortgages against the property before construction began, but it is unclear why this is problematic, as Defendants were selling the lots to Plaintiff and loaning him the money to make the purchases.  As the Supreme Court noted in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237-38 (1989) (quoting *Sedima*, 473 U.S. at 496 n.14), "the statement that a pattern 'requires at least' two predicates implies 'that while two acts are necessary, they may not be sufficient.'"  Furthermore, "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."  *Id.* at 238.  To show a RICO pattern, "it must . . . be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity."  *Id.* at 240.  The Court further stated,

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.  It is, in either case, centrally a temporal concept–and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear to one another, are distinct requirements.  A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.  Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.  Often a RICO action will be brought before continuity can be established in this way.  In such cases, liability depends on whether the *threat* of continuity is demonstrated.

26

Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case. Without making any claim to cover the field of possibilities–preferring to deal with this issue in the context of concrete factual situations presented for decision–we offer some examples of how this element might be satisfied. A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. Suppose a hoodlum were to sell "insurance" to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the "premium" that would continue their "coverage." Though the number of related predicates may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity. In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. Such associations include, but extend well beyond, those traditionally grouped under the phrase "organized crime." The continuity requirement is likewise satisfied where it shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise."

*Id.* at 242-43 (citations omitted). Plaintiff simply has not shown a pattern of racketeering activity because, *inter alia*, he has not shown continuity. Very little is alleged with respect to the RICO claim, and Plaintiff has presented no evidence of Defendants' ongoing way of doing business. Simply put, the court concludes Plaintiff's dissatisfaction with the events concerning his three loans do not give rise to a claim pursuant to RICO.

## C.    Truth in Lending Objections

In a section entitled "Jurisdiction" in his Complaint, Plaintiff states that "[f]ederal jurisdiction is . . . accomplished pursuant to . . . Truth-in-Lending Act, 15 U.S.C.A. § 1601 et seq." (Compl. at 6.) He also seemingly asserts on page eleven of his Complaint that he alleges a violation of the Truth in Lending Act. (*Id.* at 11.) The Magistrate Judge properly observed,

The complaint does not further mention the Truth in Lending Act ("TILA"), but

27

generally alleges that "Perry S. Luthi, Sr. and Luthi Mortgage Company charged the plaintiff for items and services not rendered to the plaintiff (Complaint, ¶ 32) and that "the defendants misrepresented the rates and terms of the mortgage and promissory note at various closings." (Complaint, ¶ 40.) It is assumed these paragraphs comprise Jones' allegation that defendants violated the TILA.

(R&R dated Feb. 15, 2008 at 3.) Magistrate Judge McCrorey recommended granting Defendants'

Motion for Summary Judgment with respect to the TILA claim because he concluded the TILA

"does not cover the three loan transactions about which Jones complains." (*Id*. at 4.)

Plaintiff objects to this recommendation, asserting the TILA does apply to the three loan

transactions at issue and stating that the Defendants "admitted the loans were subject to TILA as it

relates to the plaintiff." (Objections at 48.) He states the Defendants "supplied TILA disclosures

that failed to meet the requirements of the provisions in the Act" and that the parties "never

discuss[ed] the term 'commercial loan.'" (*Id*. at 50.)

The Truth in Lending Act states in part,

The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a). The TILA specifically defines the term "consumer":

The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

*Id*. § 1602(h). Congress specifically excluded certain transactions from the TILA, including:

(1) Credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or

28

> instrumentalities, or to organizations.
> . . .
> (3) Credit transactions, other than those in which a security interest is or will be acquired in real property, or in personal property used or expected to be used as the principal dwelling of the consumer, in which the total amount financed exceeds $25,000.

*Id.* § 1603.[13]  In a 2007 opinion, the United States District Court for the Eastern District of Virginia stated,

> In light of § 1603 (and § 226.3(b)), TILA applies only to credit transactions secured by real or personal property used or expected to be used as the principal dwelling of the debtor.  Credit transactions secured by real or personal property used for *other* purposes, such as commercial rental property, fall outside the scope of TILA's coverage.

*Antonous v. First Nat'l Bank of Az.*, 508 F. Supp. 2d 466, 471 (E.D. Va. 2007); *id.* (concluding that the plaintiffs' claim for damages under 15 U.S.C. § 1640(a)(1)-(3) fails on summary judgment because the TILA is inapplicable where the plaintiffs' principal dwelling was not used to secure the credit transaction executed with the defendants).

It appears from a close reading of the Report and Recommendation that the Magistrate Judge concluded the TILA does not apply because of the exemption in 15 U.S.C. § 1603(3).  Although none of the credit transactions at issue were secured by an interest in Plaintiff's principal dwelling, it does appear they were secured by an interest in real property.  The court, however, expresses no opinion on the applicability of § 1603(3), as it finds the transactions at issue are exempted from the TILA pursuant to § 1603(1).  In his Complaint, Plaintiff states,

---

[13]The corresponding provision in Regulation Z further states in part that the TILA "does not apply to" "[a]n extension of credit not secured by real property, or by personal property used or expected to be used as the principal dwelling of the consumer, in which the amount financed exceeds $25,000 or in which there is an express written commitment to extend credit in excess of $25,000." 12 C.F.R. § 226.3(b).

> On or about the time beginning spring 2002 (approximately), the Plaintiff, Christopher B. Jones was involved in residential construction with the defendants in one aspect or another in regards to loans, mortgages and/or subcontracting. This was to develop[] and build new construction homes and properties.

(Compl. at 11.) Furthermore, it is clear that three transactions are at issue, and the "alleged scheme" of Defendants is that they "would often agree to loan an individual, contractor, builder funds to construct, develop[] new construction homes, under the pretenses of a mortgage." (*Id.*) From a reading of Plaintiff's Complaint, it appears Plaintiff purchased the lots at issue, began construction on homes on those lots, and then attempted to sell them. Finding no evidence to the contrary, the court concludes these loans were made primarily for business or commercial purposes and are therefore not covered by the TILA. *See* 15 U.S.C. § 1603(1); *see also Gombosi v. Carteret Mortgage Corp.*, 894 F. Supp. 176, 181 (E.D. Pa. 1995) (concluding no reasonable jury could determine the primary purpose of the loan was for personal purposes when a small portion went to pay the daughter's college expenses and over $100,000 went towards business purposes); *cf. Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 461-63 (5th Cir. 1999) (remanding the case back to district court for findings of fact concerning whether credit transaction for the purchase of a truck was primarily for business or consumer purposes where the evidence was conflicting).

Plaintiff argues that because Defendants made some TILA disclosures, the TILA applies. The court rejects that argument. Indeed, the Official Staff Interpretation of Regulation Z states in part,

> A creditor must determine in each case if the transaction is primarily for an exempt purpose. If some question exists as to the primary purpose for a credit extension, the creditor is, of course, free to make the disclosures, and the fact that disclosures are made under such circumstances is not controlling on the question of whether the transaction was exempt.

12 C.F.R. § 226 Supp. I, Section 226.3; *see also Antanuous*, 508 F. Supp. 2d at 472 ("[A] creditor

30

may provide a debtor with notice of the TILA-created right to rescind, even if no such right exists because the property is not the debtor's principal residence. Such a disclosure is not controlling on whether the transaction is exempt. Rather, the reality of the matter must control whether the transaction falls within the domain of TILA."). The court therefore concludes the Magistrate Judge was correct in his determination that the TILA does not apply to the case *sub judice*.

## D.    Other Federal Claims

Plaintiff seemingly asserted various other federal causes of action, but as noted above, the Magistrate Judge recommended granting Defendants' Motion for Summary Judgment on these claims for various reasons. Plaintiff has made no objections to these determinations, and a review of the R&R indicates the Magistrate Judge's analysis is correct. For this reason, the court grants Defendants' Motion for Summary Judgment with respect to the following claims: 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); the Federal Trade Commission Act; 42 U.S.C. § 1983; the Sherman Antitrust Act; the Clayton Act; and the Real Estate Settlement Procedures Act.[14]

## E.    Objections Concerning Recommendation to Deny Motions for Default Judgment and to Grant Summary Judgment Sua Sponte to Certain Defendants

A section of Plaintiff's Objections is titled "Objections to Frow." (*See* Objections at 4.) Plaintiff filed Motions for Default Judgment against Defendants Ira Handy, Handy's Moisture and Pest Control, Sonny Ninan, Ron Platt, and Marsha Platt. (*See* Doc. Nos. [35] and [56].) The R&R concluded that Ira Handy, Handy's Moisture and Pest Control, Ron Platt, and Marsha Platt were

---

[14]In his "Cross-Motion for Summary Judgment and Response in Opposition to Defendants' Motion for Summary Judgment" filed on or about March 27, 2008, it appears Plaintiff may object to the Magistrate Judge's recommendation with respect to his alleged § 1983 claim. He does not, however, address the Magistrate Judge's determination that Plaintiff failed to show any of the Defendants were state actors. (*See* R&R dated Feb. 15, 2008 at 5.) To the extent Plaintiff objects to this recommendation, the objection is thus without merit.

properly served and have not appeared in the case. (*See* R&R dated Feb. 15, 2008 at 13.) The R&R states,

> The issue presented with respect to these defendants is whether they should be held in default and liable to Jones even though this Report and Recommendation recommends that the motion for summary judgment of the answering defendants be granted and that all claims against them be dismissed. In Frow v. De La Vega, 82 U.S. 552 (1872), the Supreme Court found that such a result would be an "incongruity" and "absurd." Id. at 554. Some courts have limited Frow to cases in which the defendants are jointly liable. See In re Uranium Antitrust Litig., 617 F.2d 1248, 1256-58 (7th Cir. 1980) and International Controls Corp. v. Vesco, 535 F.2d 742, 746-47 (2d Cir. 1976). In U.S. for Use of Hudson v. Peerless Ins. Co., 374 F.2d 942, 944 (4th Cir. 1967), the Fourth Circuit held that "although Frow was a case of joint liability, we think the procedure established for multiple defendants by Rule 54(b) is strikingly similar to situations of joint liability but also to those where liability is joint and/or several." Courts have used their discretion to not impose default judgment against defendants in circumstances similar to the non-answering defendants in this case. See Jefferson v. Briner, Inc., 461 F. Supp. 2d 430 (E.D. Va. 2006); Carter v. Rosenberg, 2005 WL 782923 (D. Md. April 7, 2005) (unpublished); Moss v. Moss, 2005 WL 1288134 (Bankr. M.D.N.C. May 16, 2005); Phoenix Renovation Corp. v. Gulf Coast Software, Inc., 197 F.R.D. 580 (E.D. Va. 2000). Thus, it is recommended that Jones' motions for default judgment and for writ of mandamus be denied.

(R&R dated 2/15 at 14-15.)

Plaintiff objects to this recommendation, stating,

> Because the defendants still have made no attempt to defend even the default motion itself, [they] should not be deprived of responsibility and liability to this plaintiff. Therefore, and in light of [P]laintiff's objection to the Magistrate's invocation of Frow, this issue should be decided in favor of the Plaintiff.

(Objections at 7.) He also states that "to apply Frow to a claim of joint and several liability is to apply that venerable case to a context for which it was never intended." (*Id*. at 5.)

As the Magistrate Judge noted in the R&R, the Fourth Circuit spoke on the issue in *Peerless Ins. Co. See Peerless*, 374 F.2d at 944. "Although one district court has relied on contemporary authority from other circuits to limit *Frow* to instances of formal joint liability, *see Weft Inc. v. G.C.*

32

*Inv. Associates*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986), the Fourth Circuit has yet to revisit the matter." *Phoenix Renovation Corp.*, 197 F.R.D. at 583. While the court acknowledges that not all courts would apply *Frow* to the case *sub judice*, the court finds the Magistrate Judge appropriately recommended its application. The court has examined Plaintiff's federal claims on the merits and determined that Defendants' Motion for Summary Judgment should be granted. Given that all Defendants, including the non-answering ones, have similar defenses to the federal claims, the court finds default judgment should not be entered against Ira Handy, Handy's Moisture and Pest Control, Sonny Ninan, Ron Platt, and Marsha Platt. *See* 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 55.25 (3d ed. 2006) ("When multiple defendants are similarly situated, even if the liability asserted against them is not joint, default judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits."); *see also Neilson v. Chang (In re First T.D. & Inv., Inc.)*, 253 F.3d 520, 532 (9th Cir. 2001) (extending *Frow* to certain circumstances where defendants have closely related defenses or are otherwise similarly situated, even if not jointly and severally liable, so as to avoid inconsistent judgments against multiple defendants); *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (allowing non-answering defendants to benefit from the favorable ruling on the appearing party's summary judgment motion because it would be "'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants"). The court therefore overrules Plaintiff's objection.

**F.    Objections Concerning Plaintiff's State Law Claims**

The remainder of Plaintiff's objections appear to concern the causes of action pursuant to the law of South Carolina. Although the Magistrate Judge analyzed the Plaintiff's state law causes of action, the R&R also states,

33

Plaintiff fails to show that the defendants have violated his rights under federal law (as discussed above) such that only potential state law claims remain. Thus, it is alternatively recommended that any remaining state law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

(R&R dated Feb. 15, 2008 at 13.)  Pursuant to 28 U.S.C. § 1367(a), "in any civil action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ."  However, subsection (c) states,

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

This court agrees with the Magistrate Judge's recommendation that the state law claims be dismissed pursuant to § 1367(c)(3).  The court therefore expresses no opinion on the Magistrate Judge's substantive analysis of the state law claims but instead dismisses them pursuant to § 1367(c)(3).  *Cf. Waybright v. Frederick County, Md., Dep't of Fire & Rescue Servs.*, No. 07-1289, slip op. at 15 (4th Cir. June 2, 2008) ("With all its federal questions gone, there may be the authority to keep it in federal court under 28 U.S.C. §§ 1367(a) and 1441(c) (2000), but there is no good reason to do so.").

34

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that:

1.    Plaintiff's Motion to Certify Class (Doc. No. 33) is **DENIED**;

2.    Plaintiff's Motions for Summary Judgment (Doc. Nos. 67, 68, 69, and 150) are **DENIED**;

3.    Plaintiff's Motion for Partial Summary Judgment (Doc. No. 70) as to his claim under the Truth in Lending Act is **DENIED**;

4.    Plaintiff's Motions for Default Judgment and for Writ of Mandamus (Doc. Nos. 35, 56, and 92) are **DENIED**;

5.    Plaintiff's Motion for Entry of Judgment (Doc. No. 82) is **DENIED**;

6.    Plaintiff's Motion to Amend (Doc. No. 148) is **DENIED**;

7.    The Motion for Summary Judgment filed by Defendants Perry S. Luthi, Sr., Desmine Sartain a/k/a Dee Dee Sartain, Luthi Mortgage Company, Inc., Carolina Tax Service, Luthi Construction Company, Liberty Funding, General Funding, Perry S. Luthi, Jr., Martha Pace, Lori Murphy, Pete Peterson, Michael Hulburt, and Kimberly Ray (Doc. Number 71) is **GRANTED** as to Plaintiff's federal claims;

8.    Summary Judgment is **GRANTED** sua sponte in favor of Defendant Carol A. Simpson as to Plaintiff's federal claims;

9.    Summary Judgment is **GRANTED** sua sponte as to Ira Handy, Handy's Moisture and Pest Control, Ron Platt, Marsha Platt, and Sonny Ninan as to Plaintiff's federal claims; and

10.   Plaintiff's state law claims are **DISMISSED** pursuant to 28 U.S.C. § 1367(c)(3).

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**June 9, 2008**

35

## **NOTICE OF RIGHT TO APPEAL**

Petitioner is hereby notified that he has the right to appeal this Order within thirty (30) days from the date hereof, pursuant to Federal Rules of Appellate Procedure 3 and 4. *See* Fed. R. App. P. 3-4.